**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| Rita Ayre, | Judge: |
| 2551 Lakewood Drive | |
| Columbus, Ohio 43231 | Case No: |
| | |
|     Plaintiff, | |
| | |
| v. | |
| | |
| Cenlar Agency, Inc. | |
| c/o CT Corporation System | |
| 4400 Easton Commons Way | |
| Suite 125 | |
| Columbus, Ohio 43219 | |
| | |
|     Defendant. | |

**COMPLAINT FOR MONEY DAMAGES**

**JURY DEMAND ENDORSED HEREIN**

The following allegations are based upon Plaintiff's personal knowledge, the

investigation of counsel, and information and belief. Plaintiff, through counsel, alleges as

follows:

**I. INTRODUCTION**

1. Time and time again, Plaintiff Rita Ayre ("Plaintiff") sent in documents to Cenlar

   Agency, Inc., ("Defendant"), in order to complete her loss mitigation application to

   save her home. This process has dragged on for over a year. Defendant continues to

   create unnecessary and absurd hurdles, forcing Plaintiff to repeatedly send in the same

   documents, over and over. Plaintiff submitted a complete loss mitigation application

   on multiple occasions, and yet Defendant refuses to review her for loss mitigation

options. Not only has Defendant failed to perform its duties under federal law, but it has made false representations to Plaintiff, whiling keeping her in loss mitigation limbo.  Defendant's actions frustrate the very purpose of the laws designed to prevent these situations.   Plaintiff has been patient, but as the weeks turned into months, and now over a year, her mortgage balance continues to rise. As such, Plaintiff had no choice but to bring this lawsuit.

## II. PRELIMINARY STATEMENT

2.  Plaintiff institutes this action for actual damages, statutory damages, attorney fees, and the costs of this action against Defendant for violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.* and Regulation X, 12 C.F.R. § 1024 and for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*

## III. JURISDICTION

3.  This Court has subject matter jurisdiction over Count One under RESPA, 12 U.S.C. 2614, and 28 U.S.C. 1331 and 1337.

4.  This Court has subject matter jurisdiction over Count Two under the FDCPA, 15 U.S.C. § 1692k(d) and 28 U.S.C. §§ 1331 and 1337.

5.  The Court has personal jurisdiction over Defendant because Defendant transacts business within this District, the loan at issue was incurred within this District, and the property which was the subject of the loan at issue is located within this District. *International Shoe v. Washington*, 326 U.S. 310 (1945).

6. Venue is proper in accordance with 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district and the property is located in this judicial district.

## IV. PARTIES

7. Plaintiff is a natural person currently residing within this Court's jurisdiction at 2551 Lakewood Drive, Columbus, Ohio 43231.

8. At all relevant times, Plaintiff was and is a "person" within the meaning of RESPA at 12 U.S.C. § 2602(5).

9. At all relevant times, Plaintiff was and is a "borrower" within the meaning of RESPA.

10. Defendant is a company organized under the laws of the United States of America with its principal place of business in New Jersey.

11. At all relevant times, Defendant was and is a "person" within the meaning of RESPA, 12 U.S.C. § 2602(5).

12. At all relevant times, Defendant was and is a loan "servicer" of Plaintiff's "federally related mortgage loan" within the meaning of those terms in RESPA respectfully at 12 U.S.C. §§ 2605(i)(2) and 2602(1).

13. At all relevant times, Defendant was engaged in "servicing" within the meaning of RESPA, 12 U.S.C. § 2605(i)(3).

14. At all relevant times, Plaintiff was and is a consumer within the meaning of the FDCPA at 15 U.S.C. § 1692a(3).

15. At all relevant times, Defendant was and is a "debt collector" within the meaning of the FDCPA, 15 U.S.C. § 1692a(6).

16. Defendant regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another.

17. At all times relevant, Defendant was and is a "debt collector" under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692a(6) because it acquired servicing rights after the debt account was allegedly in default or treated it as if it was in default when it acquired servicing rights.

18. At all relevant times, the note and mortgage on Defendant's personal residence at issue in this case is a "debt" within the meaning of the FDCPA, 15 U.S.C. § 1692a(5).

## V. FACTUAL ALLEGATIONS

19. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

20. Each action or inaction alleged herein against Defendant is also an allegation of action or inaction by Defendant's agents, predecessors, successors, employees, contractors, assignees, assignors, and servicers, as appropriate.

21. On or about April 15, 2003, Plaintiff financed the residential real property located at 2551 Lakewood Drive, Columbus, Ohio 43231 with a note secured by a mortgage (collectively the "Mortgage Loan").

22. CitiMortgage, Inc. ("Citi") serviced the Mortgage Loan.

23. In or around the fall of 2018, Plaintiff contacted Citi seeking help with her Mortgage Loan.

24. In or around December 2018, Defendant submitted an application to be considered for alternatives to foreclosure along with supporting financial and hardship documents (the "Application").

25. Defendant submitted all documents requested by Citi for evaluation of loss mitigation options.

26. On or about March 15, 2019, servicing of the Mortgage Loan transferred from Citi to Defendant.

27. At the time servicing transferred from Citi to Defendant the Mortgage Loan was allegedly in default.

28. On or about April 5, 2019, Plaintiff submitted additional documents to Defendant in connection with the Application.

29. Defendant failed to send Plaintiff notice within 5 days indicating whether the Application was complete.

30. On or about April 29, 2019, Defendant informed Plaintiff the Application was complete.

31. On or about May 1, 2019, Defendant sent Plaintiff a notice requesting she submit additional documents.

32. The May 1, 2019 notice Defendant sent gave Plaintiff until May 31, 2019 to submit the additional documents.

33. Plaintiff submitted all the requested additional documents prior to May 31, 2019.

34. Defendant failed to send Plaintiff notice within 5 days of receiving the additional document Plaintiff submitted in May 2019.

35. On or about June 7, 2019, Defendant sent Plaintiff a notice stating it would not review the Application because it did not receive all the requested documents.

36. On or about June 13, 2019, Plaintiff emailed Defendant asking if Defendant sent the June 7, 2019 notice in error.

37. On or about June 25, 2019, Defendant emailed Plaintiff stating it still needed Plaintiff's 2017 tax return.

38. At the time, Defendant already had Plaintiff's 2017 tax return.

39. At the time, Plaintiff had already sent her 2017 tax returns to Citi.

40. Defendant had an obligation to obtain all information regarding the Application from Citi.

41. On or about July 3, 2019, Defendant sent Plaintiff a notice requesting that she submit additional documents.

42. The July 3, 2019 notice Defendant sent gave Plaintiff until August 17, 2019 to submit the additional document.

43. The July 3, 2019 notice requested Plaintiff to send in documents Defendant already had in its possession.

44. Plaintiff submitted all the requested additional documents prior to the August 17, 2019 deadline.

45. Defendant failed to send Plaintiff notice within 5 days of receiving the additional documents Plaintiff submitted.

46. On or about August 21, 2019, Plaintiff submitted updated documents to Defendant in connection with the Application.

47. One of the documents Plaintiff included was a signed authorization permitting Defendant to obtain Plaintiff's credit report.

48. As the current servicer of the loan Defendant did not need a signed authorization to pull Plaintiff's credit report.

49. On or about August 21, 2019, Defendant sent Plaintiff a notice requesting additional document.

50. The August 21, 2019 notice requested several documents that Plaintiff submitted on August 21, 2019.

51. The August 21, 2019 notice Defendant sent gave Plaintiff until September 5, 2019 to submit the additional documents.

52. The August 21, 2019 notice requested documents Defendant already had in its possession.

53. Defendant did not send Plaintiff notice within 5 days of receiving the additional documents on or about August 21, 2019.

54. On or about September 5, 2019, Plaintiff submitted additional documents to Defendant.

55. Plaintiff submitted all the requested documents by the September 5, 2019 deadline.

56. On or about September 7, 2019, Defendant sent Plaintiff a notice stating it would not review the application because it did not receive all the requested documents.

57. On or about September 9, 2019, Plaintiff send Defendant updated financial documents.

58. On or about September 13, 2019, Defendant sent Plaintiff a notice that the Application was complete.

59. The September 13, 2019 notice stated Defendant considered the Application complete as of September 10, 2019.

60. Defendant failed to send Plaintiff notice within 30 days from when it considered the Application complete informing her whether she qualified for any loss mitigation options.

61. On or about September 13, 2019, Defendant pulled Plaintiff's credit report.

62. On or about October 16, 2019, Defendant requested additional documents.

63. The documents Defendant requested included documents it already had in its possession.

64. On or about October 16, 2019, Plaintiff submitted additional documents to Defendant.

65. On or about October 21, 2019, Plaintiff submitted updated financial documents to Defendant.

66. Defendant failed to send Plaintiff notice within 5 days of receiving the additional documents.

67. On or about November 1, 2019, Defendant emailed Plaintiff claiming it could not access her credit report.

68. At the time, Defendant already had in its possession an authorization signed by Plaintiff allowing it to access Plaintiff's credit report.

69. Prior to this, Defendant had already accessed Plaintiff's credit report.

70. On or about November 7, 2019, Plaintiff emailed Defendant instructing it that as the current mortgage servicer it did not need any authorization to access the credit report.

71. On or about November 20, 2019, Defendant emailed Plaintiff and instructed her to submit a signed authorization to allow it to access Plaintiff's credit report.

72. On or about November 21, 2019, Plaintiff sent Defendant a signed authorization allowing it to access her credit report.

73. On or about November 22, 2019, Defendant sent Plaintiff a notice requesting additional documents.

74. The November 22, 2019 notice gave Plaintiff until January 6, 2020 to submit additional documents.

75. On or about December 10, 2019, Plaintiff submitted additional document to Defendant.

76. Defendant failed to send Plaintiff notice within 5 days of receiving the additional documents.

77. On or about December 13, 2019, Plaintiff submitted updated financial documents to Defendant.

78. On or about December 17, 2019, Plaintiff submitted updated financial documents to Defendant.

79. On or about December 19, 2019, Defendant emailed Plaintiff notifying her that the application was complete.

80. Defendant failed to send notice to Plaintiff within 30 days of December 19, 2019 notifying her whether she qualified for any loss mitigation options.

81. On or about January 21, 2019, Plaintiff emailed Defendant regarding the status of the Application.

82. Only after Plaintiff emailed Defendant, did it send a notice dated January 6, 2020 claiming the Application was incomplete.

83. As of the date of filing this Complaint, Defendant has yet to review and make a determination as to whether Plaintiff qualifies for any loss mitigation options.

84. Several of the notices Defendant did send did not contain the required disclosures of 12 C.F.R. 1024.41.

85. Defendant has repeatedly allowed Plaintiff's financial documents to go stale.

86. As a result of Defendant's actions, Plaintiff has suffered actual damages including but not limited to additional fees, interest, arrearages and charges assessed against the Mortgage Loan as well as the cost and time of preparing and submitting documents in association with the Application, including incurred legal fees for the assistance with such efforts.

87. As a result of Defendant's actions, Plaintiff suffers severe emotional distress, including but not limited to anxiety, stress, depression, and sleepless nights.

88. As a result of Defendant's actions, Plaintiff incurred the legal fees and expenses of bringing this lawsuit.

## VI. FIRST COUNT – RESPA Loss Mitigation

89. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

90. Defendant's actions described in this Complaint constitute violations of RESPA, 12 U.S.C. § 1601, *et seq*., and Regulation X, and 12 C.F.R. § 1024.41.

91. As discussed above, Plaintiff's Application was both complete pursuant to 12 C.F.R. § 1024.41, and facially complete pursuant to C.F.R. § 1024.41(c)(2)(iv), on multiple occasions.

92. By failing to exercise reasonable diligence in obtaining documents and information to allegedly complete the Application, Defendant violated Regulation X, 12 C.F.R. § 1024.41(b)(1).

93. By failing to provide Plaintiff with the correct notices regarding Plaintiff's Application, Defendant violated Regulation X, 12 C.F.R. § 1024.41(b)(2)(i)(B).

94. By failing to provide Plaintiff with notice that the Application was complete, Defendant violated Regulation X, 12 C.F.R. § 1024.41(b)(2)(i)(B).

95. By failing to identify what additional documents Plaintiff needed to submit to make the Application complete, Defendant violated Regulation X, 12 C.F.R. § 1024.41(b)(2)(i)(B).

96. By failing to provide Plaintiff with notice of a reasonable date to submit additional documents to make the Application complete, Defendant violated Regulation X, 12 C.F.R. § 1024.41(b)(2)(ii).

97. By failing to promptly, upon receipt, evaluate the Application to determine if it was complete, Defendant violated Regulation X, 12 C.F.R. § 1024.41(b)(2)(i)(A).

98. By failing to evaluate Plaintiff for all loss mitigation options available in response to the Application, Defendant violated Regulation X, 12 C.F.R. § 1024.41(c)(1)(i).

99. By failing to send Plaintiff notice within thirty days after receiving the Application informing Plaintiff of all loss mitigation options, Defendant violated Regulation X, 12 C.F.R. § 1024.41(c)(1)(ii).

100.    By failing to promptly request additional information and documentation from Plaintiff and allow a reasonable opportunity for Plaintiff to meet the request after the Application was facially complete, Defendant violated Regulation X, 12 C.F.R. § 1024.41(c)(2)(iv).

101.    By failing to exercise reasonable diligence in obtaining documents and

information not in Plaintiff's control, Defendant violated Regulation X, 12 C.F.R. §

1024.41(c)(4)(i).

102.    By failing to send Plaintiff notice that Defendant had not received documentation

and information not in Plaintiff's control, Defendant violated Regulation X, 12 C.F.R.

§ 1024.41(c)(4)(ii)(B).

103.    By failing to send correct and timely notice of receipt of Plaintiff's complete loss

mitigation application, Defendant violated Regulation X, 12 C.F.R. § 1024.41(c)(3).

104.    Defendant regularly fails to evaluate and process its borrowers' loss mitigation

applications in compliance with RESPA and Regulation X.

105.    Defendant has engaged in a pattern or practice of non-compliance with the

requirements of RESPA and Regulation X.

106.    As a result of Defendant's actions, Plaintiff has suffered actual damages including

but not limited to additional fees, interest, arrearages and charges assessed against the

Mortgage Loan, loss of equity, as well as the cost and time of preparing and

submitting documents in association with the Application, including incurred legal

fees for the assistance with such efforts.

107.    As a result of Defendant's actions, Plaintiff suffers severe emotional distress,

including but not limited to anxiety, stress, depression, and sleepless nights.

108.    Due to these violations, Defendant is liable to Plaintiff for actual damages to be

determine at trial, additional damages in the amount of at least $2,000, plus attorney

fees, and costs of the action, including pursuant to 12 U.S.C. § 2605(f).

**VII. SECOND COUNT - FDCPA**

109.    Plaintiff incorporates all other paragraphs in this Complaint by reference as

though fully written here.

110.    Defendant's actions described in this Complaint constitute violations of the

FDCPA, 15 U.S.C. § 1692, *et seq.*

111.    Defendant's actions constitute false, deceptive, or misleading representations in

connection with the collection of the debt in violation of 15 U.S.C. § 1692e, including

but not limited to:

      a.  Making false representations in connection with Plaintiff's Application.

      b.  Falsely representing its ability to collect on the alleged debt in violation of

         the FDCPA, 15 U.S.C. 1692e(5);

      c.  Falsely representing the legal status, character, or amount of the debt in

         violation of the FDCPA, 15 U.S.C. 1692e(2)(A).

112.    As a result of the Defendant's actions and communications to collect a debt,

Plaintiff suffered emotional distress, sleepless nights, depression, excessive stress, and

anxiety.

113.    As a further result of the Defendant's actions and communications to collect a debt,

Plaintiff incurred actual damages, including but not limited to: increased arrearages on

loan, capitalized costs, loss of equity, the costs associated with bringing this lawsuit,

and increased interest on principal.

114.    Defendant is liable to Plaintiff for damages including, but not limited to, her actual

damages including under 15 U.S.C. § 1692k(a)(2)(A); the costs of this action and

attorney fees, including pursuant to 15 U.S.C. § 1692k(a)(3) and other relief as this

Court deems just and necessary.

## VIII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that this Court:

115.    Assume jurisdiction of this case;

116.    Award Plaintiff maximum damages on the Counts, including the maximum

statutory damages available, the maximum economic and non-economic damages

available, including actual, emotion, general, punitive, and other damages;

117.    Award Plaintiff actual damages to be established at trial including pursuant to 12

U.S.C. § 2605(f);

118.    Award Plaintiff statutory damages in the amount of at least $2,000, plus attorney

fees, and costs of the action, including pursuant to 12 U.S.C. § 2605(f);

119.    Award Plaintiff actual damages to be established at trial including pursuant to 15

U.S.C. § 1692(k)(a)(1);

120.    Award Plaintiff statutory damages in the amount of at least $1,000, plus attorney

fees, and costs of the action, including pursuant to 15 U.S.C. § 1692k(a)(2)(A);

121.    Declare Defendant's actions violate RESPA and the FDCPA;

122.    Award Plaintiff additional damages and costs; and

123.    Award such other relief as the court deems appropriate.

Dated this <u>March 10, 2020</u>

Respectfully Submitted,
DOUCET GERLING CO., L.P.A

/s/Andrew J. Gerling_____
Andrew J. Gerling (0087605)
*Attorney for Plaintiff Rita Ayre*
655 Metro Place South, Suite 600
Dublin, OH  43017
PH:  614-221-9800
FAX: 818-638-5548
Andrew@Doucet.Law

## JURY TRIAL DEMANDED

The plaintiffs respectfully request a jury trial on all triable issues.

Respectfully Submitted,
DOUCET GERLING CO., L.P.A

/s/Andrew J. Gerling_____
Andrew J. Gerling (0087605)
*Attorney for Plaintiff Rita Ayre*
655 Metro Place South, Suite 600
Dublin, OH  43017
PH:  614-221-9800
FAX: 818-638-5548
Andrew@Doucet.Law